**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | |
| | * | **Criminal No. MJM-23-272** |
| **ANTHONY NICHOLS,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*\*\*\*\*\*\*

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE (ECF NO. 95)**

The United States of America, by and through counsel, respectfully submits this Response in Opposition to Defendant Anthony Nichols' Motion to Suppress Evidence. ECF No. 95. The Defendant lacked a reasonable expectation of privacy while moving about a public space and dealing drugs. Law enforcement's monitoring of his actions via a security camera, therefore, did not constitute a search under the Fourth Amendment. Moreover, law enforcement developed probable cause for the Defendant's arrest after observing him engaging in hand-to-hand drug transactions. The subsequent search of the Defendant was constitutionally sound. The Defendant's motion must be denied.

**BACKGROUND**

On May 1, 2023, at approximately 4:00 p.m., Baltimore City Police Detective Luke Shelly was monitoring a CitiWatch camera from the Western District Baltimore City Intelligence Center ("BCIC"). The Defendant was observed via the camera circling a public street on a red bicycle within the 500 block of Cumberland Street in West Baltimore. Ex. 1 (CitiWatch clip from

approximately 4:02 pm through 4:04 pm).[1]  The camera zoomed in on the Defendant and within a minute the Defendant was approached by another individual carrying a red bag.  The Defendant stepped off his bicycle and faced the man with the red bag.  *Id*.  The camera zoomed in further. *Id*.  The Defendant can be seen clearly removing a clear plastic baggie from his pocket and handing small items to the other man, who in turn handed the defendant cash.  *Id*.  The Defendant then handed another small item to the man with the red bag. *Id*.  The Defendant quickly slipped the plastic baggie back into his pocket. *Id*.  The following is a screenshot of a portion of that transaction:



Detective Shelley observed at least one more hand to hand drug transaction.  At approximately 6:30 p.m., the Defendant, now standing with his yellow mask pulled down, was approached by a man carrying a blue backpack.  Ex. 2 (CitiWatch clip at approximately 6:36 p.m.).

---

[1] All five exhibits cited in this filing are multimedia files and were, therefore, provided directly to the Court on a physical medium.  The Government provided standby counsel for the Defendant with the exhibits via a file sharing site.

The Defendant again removed a clear plastic baggie from his pocket and handed small items to the customer who approached him. *Id*. The man with the blue backpack then appeared to hand the Defendant cash, although that hand off is partially obscured by a parked car. *Id.* The Defendant then reached into his pocket, removed a stack of cash bills, and hand at least one to the man with the blue backpack. *Id*. The following is a screenshot from the transaction:



The Government anticipates that Sergeant Tristan Ferguson of the Baltimore City Police Department ("BPD") will testify that Detective Shelley alerted him to suspected hand-to-hand transactions conducted by the Defendant. Sergeant Ferguson had been a police officer for nearly two decades. He had experience policing that area of West Baltimore and knew that, in and around, the area of 500 Cumberland Street was a high-crime area. His team had made several drug and gun related arrests within that area within the year prior to May 1, 2023. After Detective Shelley relayed his observations, Sergeant Ferguson reviewed the video footage of at least the first hand-to-hand transaction described above. Based on his training, knowledge, and experience as a police officer, Sergeant Ferguson believed that the Defendant had engaged in a drug transaction, and he

developed probable cause to arrest the Defendant.

Sgt. Ferguson then coordinated with other officers in the area to stop and arrest the Defendant. When approached by law enforcement, the Defendant fled on his bicycle. Ex. 3 (CitiWatch clip of the chase). After a short pursuit, the Defendant crashed his bicycle into the rear bumper of Sergeant Ferguson's unmarked police car. *Id*. Detective Benjamin Donoghue directly pursued the Defendant on foot. Detective Donoghue's body worn camera ("BWC") footage reveals that he yelled "stop" multiple times as he chased the Defendant. Ex. 4 (Donoghue's BWC of foot chase). After a short pursuit, Detective Donoghue placed the Defendant in handcuffs and told him that he was "under arrest." *Id*. Detective Clifford Strickland soon arrived on scene and searched the Defendant incident to arrest after he was *Mirandized* by Detective Donoghue. Ex. 5 (Strickland's BWC of search incident to arrest). Detective Strickland located clear plastic baggies with nearly forty vials and gel caps filled with fentanyl and cocaine, a loaded Glock handgun strapped to the Defendant's waist, numerous packages of suboxone strips, and approximately $550 in cash. *Id*. The following are screenshots from Detective Strickland's BWC footage showing the recovery of the loaded gun and drugs packaged for distribution from the Defendant:







On August 8, 2023, a federal grand jury in the District of Maryland returned a three-count indictment charging the Defendant with violating (1) 18 USC § 922(g), possession of a firearm and ammunition by a prohibited person; (2) 21 USC § 841(a), possession with intent to distribute fentanyl and cocaine; and (3) 18 USC § 924(c), possession of a firearm in furtherance of a drug trafficking offense.  ECF No. 1.

On June 27, 2025, the Defendant, who is representing himself, filed a motion to suppress the evidence seized from him on May 1, 2023.  ECF No. 95.  In his motion, the Defendant appears to argue the following: 1) he had a reasonable expectation of privacy while moving about the 500 block of Cumberland Street and law enforcement's observations of him via the CitiWatch camera constituted an unlawful search (ECF No. 95 at 1-2, 3-4); and 2) law enforcement seized and arrested him without probable cause and the search incident to arrest was, therefore, unlawful (*id.* at 2-3).  For the reasons described below, the Defendant's motion is without merit and should be denied.

## ARGUMENT

Decades of Supreme Court and Fourth Circuit precedent make it abundantly clear that law enforcement's use of cameras to monitor public movements is not violative of the Fourth Amendment. Here, the Defendant moved around a public area dealing drugs with a loaded firearm strapped to his waist. He did not have an expectation of privacy in his movements in a public area, and law enforcement's use of a CitiWatch camera did not constitute a Fourth Amendment search.

Moreover, the officers had probable cause to arrest the Defendant after, in a high crime area, he was observed by officers conducting hand-to-hand drug transactions.

Accordingly, the Defendant's Motion to Suppress should be denied.

I.    **Law Enforcement's Use of a CitiWatch Camera to Observe the Defendant While He Was in a Public Space Did Not Violate the Defendant's Fourth Amendment Protections.**

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. The touchstone of the Fourth Amendment analysis is "reasonableness," which requires a balance "between the public interest and the individual's right to personal security free from arbitrary interference by law enforcement officers." *United States v. Watson*, 703 F.3d 684, 690 (4th Cir. 2013) (quoting *United States v. Stanfield*, 109 F.3d 976, 979 (4th Cir. 1997)). As a threshold matter, in order to assert Fourth Amendment protections, a defendant must show that he had a reasonable expectation of privacy in the place searched. "It is axiomatic that suppression of the product of a Fourth Amendment violation can be successfully urged *only* by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *United States v. Gray*, 491 F.3d 138, 144 (4th Cir. 2007) (emphasis in original; internal quotations omitted). A person's "capacity to claim the protection of the Fourth Amendment depends … upon whether the person who claims the protection … has a legitimate expectation of privacy in the invaded place." *Minnesota v. Carter*, 525 U.S. 83, 88

7

(1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). Therefore, "if the individual seeking to challenge a search does not have a legitimate expectation of privacy in the property or place being searched, the individual lacks 'standing' and the inquiry ends without consideration of the merits of the search claim." *United States v. Ferebee*, 957 F.3d 406, 417 (4th Cir. 2020).

Importantly, "[t]he burden of showing a legitimate expectation of privacy in the area searched rests with the defendant." *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013). To satisfy this burden, the defendant must satisfy a two-prong test. *See Carpenter v. United States*, 585 U.S. 296, 304 (2018). First, the defendant "must have a subjective expectation of privacy." *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010). Second, that subjective expectation of privacy must be "objectively reasonable; in other words, it must be an expectation that society is willing to recognize as reasonable." *United States v. Bullard*, 645 F.3d 237, 242 (4th Cir. 2011) (internal quotations omitted).

The Supreme Court has consistently held that "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). This is because by performing an act in public, an individual "voluntarily convey[s] to anyone who want[s] to look the fact that he [i]s traveling over particular roads in a particular direction, the fact of whatever stops he ma[kes], and the fact of his final destination when he exit[s] from public roads onto private property." *United States v. Knotts*, 460 U.S. 276, 281-82 (1983).

The Supreme Court has applied this principle to law enforcement's use of cameras to aid investigations, holding that the taking of photographs from navigable airspace does not violate the Fourth Amendment because "[a]ny member of the public flying in this airspace who glanced down could have seen everything that these officers observed." *California v. Ciraolo*, 476 U.S. 207, 213-14 (1986); *see also Dow Chemical Co. v. United States*, 476 U.S. 227 (1986) ("[T]he taking of

8

aerial photographs of [a 2,000 acre] industrial plant complex from navigable airspace is not a search prohibited by the Fourth Amendment.").  The Supreme Court in *Ciraolo* referenced Justice Harlan's oft-cited concurrence in *Katz v. United States* 389 U.S. 347, 351 (1967) for the proposition that the Fourth Amendment is not limited simply to "physical intrusions onto private property," but clarified that it was "not aimed at simple visual observations from a public place." *Ciraolo*, 476 U.S. at  214.

Notably, even in cases where the Supreme Court and Fourth Circuit have held that certain surveillance constitutes a Fourth Amendment search, the courts have explicitly distinguished and affirmed the use of standard surveillance techniques such as public surveillance cameras. *See Carpenter v. United States*, 585 U.S at 316 ("We do not . . . call into question conventional surveillance techniques and tools, such as security cameras."); *see also Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330, 345 (4th Cir. 2021) ("People understand that they may be filmed by security cameras on city streets, or a police officer could stake out their house and tail them for a time."); *Kyllo v. United States*, 533 U.S. 27, 40 (2001) (holding that the warrantless use of a thermal imaging device—"police technology" that was "not in general public use"—that could detect heat patterns inside a home discovered details about the contents of the home that could not otherwise be obtained without physical intrusion, and therefore constituted an unlawful search).

Moreover, the United States Courts of Appeals for several circuits, including the Fourth Circuit, have held that what one voluntarily exposes to the public has no Fourth Amendment protection even when the individual does not know that they are being surveilled.  In *United States v. Vankesteren*, the Fourth Circuit held that the government did not violate the Fourth Amendment when it placed a hidden, fixed-range, motion-activated video camera in the defendant's open

fields. 553 F.3d 286 (4th Cir. 2009). These fields, while owned by the defendant, were located a mile or more from his home, near a public road, and accessible to other members of the public. *Id.* at 290-91. Accordingly, because law enforcement would have been "free, as on public land, to use video surveillance to capture what any passerby would have been able to observe," the defendant had no legitimate expectation of privacy and the cameras did not constitute a search. *Id.* at 291. "That the agents chose to use a more resource-efficient surveillance method" did not change the court's analysis. *Id.*

Nearly every other circuit to address the use of security cameras in a public space, including those where the camera is trained on the defendant's home, have held that they "do not constitute a search within the meaning of the Fourth Amendment." *United States v. Harry, 130 F.4th 342*, 347 (2d Cir. 2025) (*citing United States v. Vankesteren*, 553 F.3d 286, 291 (4th Cir. 2009); *United States v. Dennis*, 41 F.4th 732, 740–41 (5th Cir. 2022); *United States v. May-Shaw*, 955 F.3d 563, 567–69 (6th Cir. 2020); *United States v. Tuggle*, 4 F.4th 505, 510–11 (7th Cir. 2021); *United States v. Hay*, 95 F.4th 1304, 1313–18 (10th Cir. 2024)). The First Circuit, sitting *en banc*, did affirm the use of a pole camera that continuously monitored the exterior of a residence for eight months straight in a particular criminal case, but the panel split on whether the search was protected by the good-faith exception or whether there was no search at all. *United States v. Moore-Bush*, 36 F.4th 320 (1st Cir. 2022).

Considering the overwhelming binding and persuasive caselaw, there can be no doubt that the use of a publicly visible CitiWatch camera trained on the Defendant while he moved around on a public street did not constitute a search under the Fourth Amendment. Law enforcement in this case could only observe via the single CitiWatch camera what the Defendant knowingly exposed to the public. The Defendant did not demonstrate a subjective expectation of privacy, and

even if he had it was not objectively reasonable.   Since the Defendant's actions occurred in plain

sight, law enforcement could have seen the exact same conduct had they been surveilling the 500

block of Cumberland Street in person.  The use of the camera is akin to an officer using binoculars

or a handheld camera.  *See Vankesteren*, 553 F.3d at 291 ("Essentially, the camera did little more

than the agents themselves could have physically done, and its use was therefore not

unconstitutional.")  Moreover, all the observations of the Defendant related to actions he took

while located in a public space.  Since in *Vankesteren* the Fourth Circuit upheld the use of a law

enforcement camera that was both located on private property and captured activity on private

property, it is abundantly clear that law enforcement's use of camera located in a public space

capturing the activities of the Defendant in a public space was lawful and not violative of the

Fourth Amendment.  *Id*.

## II.    Law Enforcement Had Probable Cause to Arrest the Defendant After Observing Him Engage in Drug Transactions and Attempt to Elude Arrest.

The Supreme Court has recognized several well-established exceptions to the warrant

requirement, including warrantless arrests based on probable cause and searches incident to lawful

arrests.  A warrantless arrest is lawful when supported by probable cause.  *United States v. Johnson*,

599 F.3d 339, 346 (4th Cir. 2010).  Probable cause exists "when, at the time the arrest occurs, the

facts and circumstances within the officer's knowledge would warrant the belief of a prudent

person that the arrestee had committed or was committing an offense."  *Id*.  In assessing the

existence of probable cause, courts examine the totality of the circumstances known to the officer

at the time of the arrest.  *United States v. Al–Talib*, 55 F.3d 923, 931 (4th Cir. 1995) (*citing Gates*,

462 U.S. at 230–31.  The Supreme Court has emphasized that probable cause is a "practical,

nontechnical conception" that deals with "the factual and practical considerations of everyday life

on which reasonable and prudent men, not legal technicians, act."  *Illinois v. Gates*, 462 U.S. 213,

231 (1983) (internal quotation marks omitted). "While probable cause requires more than 'bare suspicion,' it requires less than that evidence necessary to convict." *United States v. Walker*, 607 F. App'x 247, 253 (4th Cir. 2015) (citation and internal quotation marks omitted).

Additionally, not all officers of the investigative team need to have direct knowledge of the factual universe that creates the probable cause to effectuate an arrest. "The collective knowledge doctrine applies when at least some, but not all, of an investigative team has actual knowledge of facts necessary to a finding of probable cause." *United States v. Blauvelt*, 638 F.3d 281, 289 (4th Cir. 2011). "The knowledge is imputed from one officer to another such that the officers collectively are assumed to have actual knowledge of the imputed fact[s]." *Id*. *See also United States v. Wells*, 98 F.3d 808, 810 (4th Cir. 1996) ("[A]lthough the agent who actually seized the weapon pursuant to the supervising agent's instructions had no personal knowledge that Wells was a convicted felon, it is sufficient that the agents collectively had probable cause to believe the weapon was evidence of a crime at the time of the seizure.")

Following a lawful arrest supported by probable cause, officers may conduct a search of the arrestee's person and the area within their immediate control without a warrant. *United States v. Robinson*, 414 U.S. 218, 235 (1973); *United States v. Murphy*, 552 F.3d 405, 410 (4th Cir. 2009). This "search incident to arrest" exception serves the dual purposes of protecting officer safety and preserving evidence. *Chimel v. California*, 395 U.S. 752, 762-63 (1969).

The Defendant's arrest was supported by probable cause. Maryland law prohibits both the distribution of controlled dangerous substances and possession with the intent to distribute controlled dangerous substances. *See* Md. Code, Crim. Law § 5-602. The Government anticipates that Sergeant Ferguson will testify that, based on the totality of the circumstances, he believed that the Defendant was both distributing controlled dangerous substances and that he possessed those

controlled dangerous substances with the intent to distribute them.  After being alerted to the Defendant's suspected activities by Detective Shelley, Sgt. Ferguson personally reviewed the CitiWatch footage.  Sergeant Ferguson had knowledge that the Defendant was standing in a high crime area where his DAT squad had previously conducted numerous drug and gun arrests. Sergeant Ferguson relied upon his extensive training, knowledge, and nearly two decades of police experience when he made a probable cause determination upon reviewing the video footage.  The Defendant's actions—removing small items from a clear plastic bag and handing them to an individual in exchange for cash—was consistent with a hand-to-hand drug transaction.  The "totality of the circumstances" known to Sgt. Ferguson provided probable cause to arrest the Defendant and search him incident to arrest.  *Al-Talib*, 55 F.3d at 931.  Sgt. Ferguson then "imputed" his knowledge to the other officers who made up the arrest team of the Defendant.

A court in this District recently ruled that law enforcement had sufficient basis for a probable cause arrest under very similar circumstances involving observations of a hand-to-hand transaction over a CitiWatch camera.  In support of its finding, the Court noted the experience of the detective, that the detective "personally observed a transaction, purposefully conducted in a semi-concealed location, involving an exchange of small objects for money outside a storefront known for prior CDS and criminal activity." *United States v. Lee*, No. CR SAG-23-394, 2025 WL 1725763, at *3 (D. Md. June 20, 2025).  For many of the same reasons, this Court should find that the Defendant's "conduct warrants the belief of a prudent person that Defendant had committed or was committing a CDS offense." *See id.*  (citing *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984)).  Since the arrest was supported by probable cause, the subsequent search of the

Defendant, and the recovery of the loaded handgun and distribution-quantity drugs, was constitutionally valid.[2]

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court deny the Defendant's Motion to Suppress.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

_____/s/_____
Ari D. Evans
Calvin Miner
Assistant U.S. Attorneys

---

[2] If the Court does not believe that law enforcement had established probable cause following the review of the CitiWatch footage, the Government reserves the right to argue, at a minimum, that the officers had reasonable suspicion to conduct an investigatory stop when they approached the Defendant in the 500 block of Cumberland Street, and he fled the scene. "The police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). The Supreme Court has made clear that officers may obtain reasonable suspicion based in part on their knowledge that a certain area is a high crime area and the defendant's flight from law enforcement. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *United States v. Slocumb*, 804 F.3d 677, 682 (4th Cir. 2015). Here, the officers clearly had reasonable suspicion of criminal activity. The Defendant was in a high crime area and engaged in at least two hand-to-hand transactions indicative of drug dealing. He then fled from law enforcement when they arrived on scene. Soon after detaining the Defendant, they discovered controlled dangerous substances in his pocket, which certainly would have ripened the investigatory stop into a probable cause arrest.

14

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on July 11, 2025, a copy of this motion was served on standby counsel via CM/ECF. A copy of the motion will be mailed to the Defendant on July 11, 2025, at the facility where he is currently incarcerated.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

Date: July 11, 2025      By:      /s/

Ari D. Evans
Assistant United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

15